# United States Court of Appeals
## For the First Circuit

No. 24-1527

ALEXANDRA E. MELINO,

Plaintiff, Appellant,

v.

BOSTON MEDICAL CENTER,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Howard, Circuit Judges.

Peter Vickery for appellant.

Jamie L. Kessler, with whom Matthew D. Freeman, Jeanette M.
Piaget, and Jackson Lewis P.C. were on brief, for appellee.

January 29, 2025

**LYNCH**, **Circuit Judge**.  Alexandra Melino, a registered nurse, sued her former employer, Boston Medical Center (BMC), alleging that BMC violated Title VII of the Civil Rights Act and Mass. Gen. Laws ch. 151B by denying her request for a religious exemption under its August 21, 2021 policy mandating that all employees and volunteers be vaccinated against COVID-19.  The district court granted summary judgment to BMC, holding that Melino's requested exemption would have imposed undue hardship on her employer.  See Melino v. Bos. Med. Ctr., No. 22-12119, 2024 WL 2724145, at *1-2 (D. Mass. May 28, 2024).  Melino appeals both the grant of summary judgment and an order denying her motion to strike portions of an affidavit submitted by BMC.  We affirm.

**I.**

We recite the undisputed facts of record.

Melino began working as a registered nurse in BMC's Cardiac Intensive Care Unit (CCU) in 2014.  Her primary duties were providing direct care for patients in critical condition and coordinating with those patients' families.  In doing so, she worked alongside physicians, four to eight other nurses, and two certified nursing assistants, as well as others.  Melino at times also worked shifts in the Medical Intensive Care Unit and the Surgical Intensive Care Unit.

At the start of the COVID-19 pandemic, in March 2020, BMC converted several units, including the CCU where Melino worked,

- 2 -

into COVID-19 units to deal with the overwhelming influx of seriously ill patients infected with the COVID-19 virus. Between January 31, 2020 and July 31, 2021, BMC treated 3,281 patients for COVID-19. BMC says it was short-staffed; indeed, "several hundred" BMC staff members reported contracting COVID-19. BMC's firsthand experience was that its healthcare providers were more likely to contract COVID-19 than others because of their greater-than-average exposure to the virus, and that those providers were at increased risk of spreading the virus to their patients, "which included persons who were medically vulnerable to serious complications and death from the disease." BMC determined that any increased risk of COVID-19 transmission within the hospital would "negatively impact its ability to provide critical care to patients by reducing the number of staff." To address these concerns, BMC adopted the federal Centers for Disease Control and Prevention's (CDC) recommendation that "vaccination was the best way to protect against severe illness, hospitalization, and death, and reduce the transmission of COVID-19."[1] BMC began offering the

_____

[1] The CDC recommended that "[a]ll healthcare personnel . . . get vaccinated against COVID-19" because they may be "at increased risk of infection" due to their work "providing critical care to those who are or might be infected." COVID-19 Vaccines for Healthcare Personnel, Centers for Disease Control and Prevention (May 27, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/hcp.html [https://perma.cc/DH2A-A7L7]. The CDC's website reported that "the vaccines reduce the risk of COVID-19, especially severe illness, among people who are fully vaccinated," offer "protection against symptoms," and "also

COVID-19 vaccine to its employees soon after the vaccine became available to healthcare workers in January 2021.

Based on its own experience and on the CDC recommendations, BMC implemented an immunization policy on August 21, 2021, requiring all individuals working or volunteering at BMC work locations to be immunized against COVID-19 according to CDC guidelines. The policy permitted covered individuals to submit requests for medical or religious exemptions to this requirement.

---

help avoid people get[ting] infected with the virus that causes COVID-19." COVID-19 Vaccine Effectiveness, Centers for Disease Control and Prevention (Aug. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/how-they-work.html [https://perma.cc/AJ88-7NGA]. It also advised that "COVID-19 vaccination can reduce the spread of the disease overall." COVID-19 Vaccines Work, Centers for Disease Control and Prevention (August 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/P9HY-UR6L].

The leading academic study on vaccine efficacy posted on the CDC's website related that "[t]he [CDC's] Advisory Committee on Immunization Practices recommended prioritization of [health care professionals] for COVID-19 vaccination to maintain provision of critical services and reduce spread of infection in health care settings." Tamara Pilishvili et al., Interim Estimates of Vaccine Effectiveness of Pfizer-BioNTech and Moderna COVID-19 Vaccines Among Health Care Personnel -- 33 U.S. Sites, January-March 2021, 70 Morbidity and Mortality Weekly Report 753, 753 (2021), https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7020e2-h.pdf [https://perma.cc/N5PG-FAJ3]. That same study also reported that, based on preliminary findings in healthcare providers at 33 sites across 25 states, the "[e]ffectiveness of a complete 2-dose regimen of [the Pfizer or Moderna] vaccines was estimated to be 94%." Id. at 754.

To the extent that this information supplements the record information concerning the CDC recommendations, we take judicial notice. See Does 1-6 v. Mills, 16 F.4th 20, 26 n.3 (1st Cir. 2021).

- 4 -

Individuals who did not comply with the policy were "subject to disciplinary action up to and including termination of their employment" with BMC.

On September 9, 2021, Melino submitted a request for a religious exemption to the COVID-19 vaccination requirement; she sought to continue to work unvaccinated in her job. On September 24, 2021, BMC sent Melino a questionnaire seeking additional information about her request. When Melino returned the questionnaire, she merely repeated her request for a religious exemption and refused to provide the other requested information. On October 7, 2021, BMC notified Melino that it was denying her exemption request and that her employment would be terminated if she did not comply with the vaccination requirement by October 15, 2021. Melino did not attempt to engage in an interactive process with BMC, nor did she request any accommodation short of a complete exemption from BMC's vaccination requirement. She did not become vaccinated, and BMC terminated her employment on October 15, 2021.

## II.

After discovery, BMC moved for summary judgment with an extensive supporting affidavit. It asserted two grounds for this motion: that Melino had not established she held a bona fide religious belief, and that even if she had, her requested exemption would have imposed undue hardship on the hospital. Like the

- 5 -

district court, we address only the second ground based on the defense of undue hardship.  See Melino, 2024 WL 2724145, at *1.

Melino opposed BMC's motion, contending that there were disputes of material fact as to "[t]he absolute risk reduction of the COVID-19 vaccines," "how long, if at all, COVID-19 vaccines protect the recipient against infection," and "how long, if at all, COVID-19 vaccines prevent the recipient from transmitting COVID-19."  Melino admitted that "[i]f the vaccines worked, it would not be difficult for [BMC] to establish undue hardship," but contended that BMC did not "even try to make the case that the vaccines do, in fact, work."  To support this contention, she pointed to a publicly available letter from Rear Admiral Denise M. Hinton, Chief Scientist of the Food and Drug Administration to Pfizer Inc., dated May 10, 2021, which authorized Pfizer's Pfizer-BioNTech COVID-19 Vaccine for emergency use in individuals aged 12 and older.  Letter from RADM Denise M. Hinton to Elisa Harkins at 2-3  (May  10,  2021),  http://www.fda.gov/media/144412/download [https://perma.cc/2PVE-8WUH].   That  letter  stated  that  "FDA's analysis of the available efficacy data . . . confirmed the vaccine was 95% effective . . . in preventing COVID-19 occurring at least 7 days after the second dose" in one phase of clinical trials, and "100%" in a later phase.[2]  Id.  The letter further stated that

_____

[2]    Melino's opposition to summary judgment included this letter as an exhibit.

- 6 -

"[b]ased on these data . . . FDA concluded that it is reasonable to believe that Pfizer-BioNTech COVID-19 Vaccine may be effective." Id. at 3. Melino argued that "[t]he words 'may be effective' do not convey a great deal of certainty."

Melino also moved to strike portions of an affidavit from John M. Hickey that referred to BMC's reliance on the CDC's recommendations. Melino argued that these references were inadmissible "hearsay within the meaning of Fed. R. Evid. 801(c)."

The district court denied Melino's motion to strike, holding that Melino had failed to comply with United States District Court for the District of Massachusetts Local Rule 7.1(a)(2), which required her to certify that she had conferred with BMC before filing her motion.[3]

In granting summary judgment, the court held that it was undisputed that: (1) "Melino could not work remotely because her job responsibilities included providing direct care to patients"; (2) "Melino could not work in-person while she remained unvaccinated without risking the health and safety of her patients"; and (3) "any feasible accommodation would have imposed 'substantial increased costs' on BMC." The district court further held that "the record was devoid of any evidence from which a

---

[3] The court also reasoned that the CDC's recommendations as to vaccination against COVID-19 and "the medical and statistical information upon which they rest" were subject to judicial notice.

reasonable juror could give credence to [Melino's] medical hypothesis" that the COVID-19 vaccines did not "work." Accordingly, BMC was entitled to summary judgment on the basis that granting Melino's requested exemption would impose undue hardship.

## III.

As to the district court's denial of the motion to strike, we review both the denial and the application of the local rules for abuse of discretion. See Amoah v. McKinney, 875 F.3d 60, 62 (1st Cir. 2017) (rulings on motions to strike reviewed for abuse of discretion); Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004) (application of local rules reviewed for abuse of discretion). "District courts enjoy broad latitude in administering local rules" and "are entitled to demand adherence to specific mandates contained in the rules." Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994).

Melino has developed no argument on appeal that the district court abused its discretion in denying Melino's motion to strike for failure to comply with Local Rule 7.1(a)(2) and does not contend that she did, in fact, contact counsel for BMC to discuss her motion. Instead, she renews the same argument she attempted to make before the district court: that portions of Hickey's affidavit were inadmissible hearsay.

The district court did not abuse its discretion in denying Melino's motion to strike. Rule 7.1(a)(2) states that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." L.R, D. Mass. 7.1(a)(2). Counsel for Melino did not so certify, and it was within the district court's discretion to deny her motion on that basis. See Clausen v. Sea-3, Inc., 21 F.3d 1181, 1196-97 (1st Cir. 1994) (affirming district court's refusal to accept motion for failure to comply with local rules).

The hearsay objection is also without merit. The objected-to passages of the summary judgment record were "offered to . . . 'supply a motive for the listener's action'" and so did not constitute hearsay. United States v. Colon-Diaz, 521 F.3d 29, 34 (1st Cir. 2008) (quoting United States v. Bailey, 270 F.3d 83, 87 (1st Cir. 2001)). And we have taken judicial notice of the substance of the CDC's recommendations.

As to entry of summary judgment, our review is de novo. Colony Place S., Inc. v. Volvo Car USA, LLC, 121 F.4th 973, 977 (1st Cir. 2024). A party is entitled to summary judgment when there is no genuine dispute of material fact and judgment is appropriate as a matter of law. Id. at 978.

We assume, arguendo, that Melino has established a prima facie case and turn directly to the Title VII defense of undue hardship. The burden of proving undue hardship is on the employer.

See Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 15 (1st Cir. 2024). "'[U]ndue hardship' is shown when a burden is substantial in the overall context of an employer's business." Groff v. DeJoy, 600 U.S. 447, 468 (2023). When assessing whether a requested accommodation would impose undue hardship, "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" Id. at 470-71 (alteration in original).

Melino's request was that she continue working at the hospital in the same capacity in the CCU and other intensive care units without being vaccinated. BMC claimed that permitting Melino to work unvaccinated would pose an undue hardship "by increasing the risk of COVID-19 transmission amongst staff and patients."

Melino does not dispute that BMC could establish undue hardship "[i]f the vaccines worked." But she argues on appeal that "[t]he onus should [have been] on BMC to prove that the products advertised as COVID-19 vaccines actually function as vaccines so as to prevent recipients from catching and spreading COVID-19." But it is uncontroverted that BMC implemented its vaccine requirement based on the CDC's recommendations, which describe vaccines as mitigating the effects and spread of COVID-

- 10 -

19.[4]  See Rodrique v. Hearst Commc'ns, Inc., No. 24-1289, 2025 WL 227489, at *4 (1st Cir. Jan 17, 2025) (finding undue hardship where "the record demonstrate[d] that [defendant] relied 'on the objective, scientific information available to [it],' with particular attention to 'the views of public health authorities'" (quoting Bragdon v. Abbott, 524 U.S. 624, 649-50 (1998)).

Melino's "undue hardship argument" also "fails because no medical evidence in the summary judgment record contradicts" BMC's position.  Id. at *6.  Melino's reliance on Rear Admiral Hinton's May 10, 2021 letter undercuts her argument.  Though the letter does acknowledge that the Pfizer vaccine's effectiveness was not known with absolute certainty, it also reports a rate of COVID disease prevention between 95% and 100% and concludes that "the known and potential benefits of [the] Pfizer-BioNTech COVID-19 Vaccine outweigh the known and potential risks of the vaccine." See Letter from RADM Denise M. Hinton to Elisa Harkins at 2-3, supra.  This record evidence, proffered by Melino, only serves to support BMC's position.[5]

---

[4]  Indeed, counsel for Melino conceded at oral argument that "the CDC's position was that somebody who's been injected with a COVID-19 vaccine has, for some period of time, a lower likelihood of getting infected, and therefore transmitting it to somebody else."

[5]  Melino argues that two online articles that she quoted in her complaint cast doubt on the vaccine's efficacy.  But the district court found that these articles were inadmissible hearsay and not properly in the record.  Because Melino does not challenge these rulings on appeal, any such argument is waived.  Sparkle

- 11 -

For the first time on appeal, Melino attempts to argue that BMC should have addressed whether it could have provided any alternative accommodations beyond the complete exemption she requested. She did not raise this argument in the district court below, and it has been waived. See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.").

The rulings of the district court are **affirmed**.

---

Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 28 (1st Cir. 2015).