**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID PETERSEN; JAY
STICKNEY; BEAU WATSON;
EVAN MERRITT; NORM ALAN
PETERSON II; RILEY KORF;
RYAN STUPEY; KEVIN
GLEASON,

*Plaintiffs - Appellants*,

v.

SNOHOMISH REGIONAL FIRE
AND RESCUE; KEVIN O'BRIEN,
Chief,

*Defendants - Appellees*.

No. 24-1044

D.C. No.
2:22-cv-01674-
TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted April 3, 2025
Portland, Oregon

Filed September 2, 2025

Before: Jay S. Bybee and Danielle J. Forrest, Circuit Judges, and Xavier Rodriguez, District Judge.[*]

Opinion by Judge Bybee

## SUMMARY[**]

### Employment Discrimination

The panel affirmed the district court's summary judgment in favor of Snohomish Regional Fire and Rescue (SRFR) in an action brought by eight firefighters alleging that, in violation of Title VII and Washington state law, SRFR failed to accommodate their religious beliefs when it denied their requests for exemptions from the governor of Washington's August 2021 proclamation requiring all healthcare providers to be vaccinated against COVID-19.

SRFR ultimately denied the firefighters' requests because it was unable to identify a reasonable accommodation that would allow the firefighters to remain in their roles without imposing an undue hardship on SRFR.

The panel held that to establish a failure-to-accommodate claim for religious discrimination under Title VII, a plaintiff must first set forth a prima facie case that he had a bona fide religious belief, the practice of which

---

[*] The Honorable Xavier Rodriguez, United States District Judge for the Western District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conflicted with an employment duty; he informed his employer of the belief and conflict; and the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement.  The burden then shifts to the employer to show that it initiated good faith efforts to reasonably accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.

Declining to scrutinize the firefighters' religious beliefs, the panel assumed that they set forth a prima facie case.  The panel held that the district court did not err in concluding that SRFR could not reasonably accommodate the firefighters' vaccine exemption requests without undue hardship.  Following *Groff v. DeJoy*, 600 U.S. 447 (2023), the panel held that undue hardship is shown when, taking into account all relevant factors in the case at hand, a burden is substantial in the overall context of an employer's business.  SRFR showed that it faced several substantial costs of accommodating the firefighters' requested vaccine exemption, including the health and safety of its own firefighters and the public, the large number of firefighters seeking accommodations, the risk to its operations and the costs of widespread absences, the potential loss of a lucrative contract, and the risk of additional liability.  In addition, SRFR provided unrebutted medical evidence that showed the inadequacy of the firefighters' proposed accommodation.  The panel concluded that SRFR thus showed that it could not reasonably have accommodated the firefighters without undue hardship in October 2021.

## COUNSEL

Jennifer W. Kennedy (argued), Law Office of Jennifer W. Kennedy, Sierra Madre, California; Jonathon Cherne and Alan J. Reinach, Church State Council, Westlake Village, California; for Plaintiffs-Appellants.

Shannon E. Phillips (argued) and Molly J. Gibbons, Summit Law Group PLLC, Seattle, Washington, for Defendants-Appellees.

## OPINION

BYBEE, Circuit Judge:

In August 2021, Washington's governor issued a proclamation requiring all healthcare providers to be vaccinated against COVID-19. In response, Defendant Snohomish Regional Fire and Rescue (SRFR) issued a vaccine mandate to its firefighters but allowed them to request accommodations based on their sincerely held religious beliefs. Plaintiffs, eight SRFR firefighters, did just that. SRFR ultimately denied these requests because it was unable to identify a reasonable accommodation that would allow firefighters to remain in their roles without imposing an undue hardship on SRFR. Plaintiffs sued under both federal and Washington law, arguing that SRFR failed to accommodate their religious beliefs. The district court granted summary judgment for SRFR, and Plaintiffs appealed. For the reasons that follow, we affirm.

## I.   BACKGROUND

SRFR "provides fire suppression and emergency medical services" in Snohomish County, Washington.  Its service area covers some 135 square miles and 175,000 persons, including 2,500 inmates housed in the Monroe Correctional Complex, a men's prison.  In 2021, SRFR responded to 18,000 emergency calls, 85% of which were for emergency medical services.  SRFR maintains eleven fire stations for its nearly two hundred career firefighters.  The fire stations serve "as a workplace, home, and gym during a firefighter['s] . . . 24-hour shift."

On August 9, 2021, Washington Governor Jay Inslee issued Proclamation 21-14 (the Proclamation), which required healthcare workers to be vaccinated against COVID-19 by October 2021.[1]  The Proclamation stated that employers should comply with Title VII and the Washington Law Against Discrimination (WLAD), among other laws.  Specifically, the Proclamation provided that healthcare workers were "not required to get vaccinated against COVID-19 if they are entitled . . . [to] a sincerely held religious belief accommodation."  The Proclamation acknowledged that, consistent with Title VII, "such accommodations" need not be provided by employers "if they would cause undue hardship."

SRFR provided its firefighters with information about the vaccination requirement and the process for requesting exemptions.  Forty-six of SRFR's 192 firefighters requested exemptions, including the eight Plaintiffs.  All the

---

[1] By the time of the Proclamation, emergency use authorizations had been approved for the Moderna and Johnson & Johnson vaccines, and full approval had recently been granted for the Pfizer vaccine.

firefighters served in various firefighting and emergency medical technician (EMT) positions, and all held EMT or paramedic certifications.

SRFR's Human Resources staff met with each employee who requested an exemption to discuss their request and any possible accommodation. SRFR simultaneously negotiated with the International Association of Fire Fighters, Local 2781 (the Union) regarding the vaccination requirement, and eventually "approved a Memorandum of Understanding ('MOU') that modified the collective bargaining agreement to provide accommodation options for firefighters if [SRFR] determined they could not be accommodated in their healthcare roles."

In these circumstances, the MOU explained that unvaccinated firefighters could use their accrued paid leave while remaining employed. After exhausting that leave, firefighters could take a one-year leave of absence without pay. The MOU also provided that if any firefighters chose to leave SRFR, they could be added to the disability rehire list, which gave them "priority"—meaning that they would not lose their rank, seniority, or benefit accrual status if they returned to SRFR within two years. Additionally, the MOU "specified that the unvaccinated frontline employees could return to work during their period of absence if [the] Proclamation . . . was updated and amended to that effect."

In October 2021, SRFR determined that it could not accommodate unvaccinated firefighters in their firefighting roles without imposing an undue hardship on its operations. SRFR explained that because a firefighter's work requires interfacing with the public, it did not have alternative positions for those seeking exemptions, nor could it facilitate their requested accommodation—masking, testing, and

social distancing.  SRFR encouraged all forty-six employees to use their accumulated leave days first and then apply for a one-year leave of absence.  SRFR approved all such requests.

SRFR continued to monitor information from public health authorities regarding COVID-19 conditions and the risks to its operations, its employees, and the community in 2021 and into 2022.  In May 2022, after the Omicron wave of COVID-19 had subsided, SRFR notified unvaccinated employees that they could either remain on leave or "return to their patient-care roles, following all applicable . . . guidelines."  Four Plaintiffs returned to work shortly after; others returned later.

Six months later, in November 2022, Plaintiffs filed suit against SRFR, Fire Chief Kevin O'Brien,[2] and unnamed defendants, and asserted two causes of action:  (1) a failure to accommodate their religious beliefs in violation of 42 U.S.C. § 2000(e) (Title VII); and (2) a violation of WLAD. Plaintiffs sought a "declaration that, under these circumstances, a leave of absence falls short of lawful reasonable accommodation" under either Title VII or WLAD.  They also asked for damages and other relief.

SRFR moved for summary judgment.  It argued that Plaintiffs' Title VII and WLAD claims should be dismissed because Plaintiffs' exemptions could not be accommodated without undue hardship to SRFR.  Plaintiffs moved for partial summary judgment and argued that SRFR failed to accommodate their exemption requests.  The district court granted summary judgment for SRFR.  The court assumed that Plaintiffs had established a bona fide religious objection

---

[2] The parties later stipulated to Chief O'Brien's dismissal.

to the vaccination. It then found that accommodating Plaintiffs' objections would impose an undue hardship on SRFR's operations. The court ruled that the undisputed evidence showed that "allowing unvaccinated firefighters to work would increase the risk of spreading COVID-19 even with the use of masks and [personal protective equipment (PPE)] because masks and PPE are effective only when worn and firefighters could not always wear masks and PPE." The court further found that "the uncontroverted evidence in this case demonstrates that unvaccinated firefighters were at a higher risk of contracting and transmitting COVID-19 even with the use of masks, PPE, testing, and social distancing." "Moreover, the fact that 46 out of 192 Snohomish Fire firefighters requested an exemption and accommodation increased Snohomish Fire's hardship and the risks associated with accommodating Plaintiffs in their patient-care roles while living and working in fire stations."

The court entered final judgment for SRFR, and Plaintiffs timely appealed.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review the district court's summary judgment decision "de novo, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party." *Edwards v. Wells Fargo & Co.*, 606 F.3d 555, 557 (9th Cir. 2010).

## III.   ANALYSIS

We begin by setting out the legal framework and then discuss its application in this case.

A. *Religious Discrimination Under Title VII*

    1. Title VII's burden-shifting framework

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). For purposes of Title VII, "[t]he term 'religion' includes all aspects of religious observance and practice . . . unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). Accordingly, "[a] claim for religious discrimination under Title VII can be asserted under several different theories, including . . . failure to accommodate." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). To do so:

> [A plaintiff] must first set forth a prima facie case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement.

*Id.* at 606. Once a plaintiff "makes out a prima facie failure-to-accommodate case, the burden then shifts to [the employer] to show that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee

without undue hardship." *Id.* (internal quotation marks and citations omitted).

Here, the district court "decline[d] to scrutinize Plaintiffs' religious beliefs" and "assume[d] that Plaintiffs have established a bona fide religious belief and have set forth their prima facie case." On appeal, SRFR does not take issue with this assumption. We, too, decline to scrutinize Plaintiffs' religious beliefs and assume they have set forth a prima facie case. On appeal of summary judgment, that leaves us with one straightforward question: Whether the district court erred in concluding that SRFR could not reasonably accommodate Plaintiffs' vaccine exemption requests without undue hardship.[3]

2. "Undue hardship" after *Groff v. DeJoy*

As we discussed above, Title VII "requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)); *see also Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th

---

[3] We consider the Title VII and WLAD claims simultaneously because the Washington standard mirrors the federal one. At the time of the district court's decision, a defendant in Washington could show undue hardship so long as accommodating a plaintiff's request imposed "more than a *de minimis* cost" on its business. *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 203 (Wash. 2014) (en banc) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)). Nonetheless, the district court evaluated the WLAD claim under the more difficult federal standard, which requires "substantial increased costs." Last year, Washington adopted the substantial cost test. *See Suarez v. State*, 552 P.3d 786, 798–99 (Wash. 2024) (en banc). Washington courts "look to federal case law" to guide their interpretation of WLAD. *Kumar*, 325 P.3d at 197.

1215, 1224 (9th Cir. 2023) ("Undue hardship is an affirmative defense . . . ."). In *Groff*, the Supreme Court clarified how lower courts should conduct the undue hardship analysis. Nearly fifty years ago, in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), the Court suggested that an employer need not demonstrate "more than a de minimis cost" to show "undue hardship." *Id.* at 84. In *Groff*, the Court observed that "*Hardison*'s reference to '*de minimis*' . . . was fleeting" and, when divorced from the context of *Hardison*, unfortunate. 600 U.S. at 465. The Court clarified that "showing 'more than a *de minimis* cost' . . . does not suffice to establish 'undue hardship' under Title VII." *Id.* at 468. The Court held that "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Id.* The Court continued:

> [A] hardship is more severe than a mere burden. So even if Title VII said only that an employer need not be made to suffer a "hardship," an employer could not escape liability simply by showing that an accommodation would impose some sort of additional costs. Those costs would have to rise to the level of hardship, and adding the modifier "undue" means that the requisite burden, privation, or adversity must rise to an "excessive" or "unjustifiable" level. . . . [W]e are pointed toward something closer to . . . "substantial additional costs" or "substantial expenditures."

*Id.* at 469 (citations omitted).

The Court counseled us to "apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer," to see if "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470–71 (alteration in original) (quotation marks and citations omitted). In the end, "'undue hardship' in Title VII means what it says," *id.* at 471, and proof of hardship to the employer is not sufficient—the hardship must be *undue*, *see id.* at 471–72. By way of example, the Court offered that "forcing other employees to work overtime would [not] constitute an undue hardship," *id.* at 473, without considering other options such as "temporary costs, voluntary shift swapping, occasional shift swapping, or administrative costs," *id.* at 471 (citing EEOC Guidelines, 29 C.F.R. § 1605.2(d)).

We have not had occasion to grapple with how exactly we should "take[] into account all relevant factors." *Id.* at 470. To date, we have cited *Groff* just four times in published cases. None of our citations are precedential here. *See Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1155 (9th Cir. 2025) (citing *Groff* once to establish that "[d]iscrimination on the basis of religious beliefs is discrimination on the basis of religion for purposes of Title VII"); *Apache Stronghold v. United States*, 95 F.4th 608, 656 n.20 (9th Cir. 2024) (en banc) (Bea, J., concurring in part), *amended and superseded on denial of reh'g en banc*, 101 F.4th 1036, 1085 n.20 (9th Cir. 2024) (Bea, J., concurring in part); *Hittle v. City of Stockton, Cal.*, 101 F.4th 1000, 1028, 1032 (9th Cir. 2024) (VanDyke, J., dissenting from the denial

of rehearing en banc). For this reason, the parties spend much of their briefing citing district court cases.[4]

It is sufficient for us to state at this point that *Groff* raised the bar that defendants must clear to show undue hardship but left us to consider a range of factors that we might deem relevant.

B. *Undue Hardship and Reasonable Accommodation in This Case*

With *Groff* in mind, we consider whether SRFR would have faced an undue hardship by accommodating Plaintiffs' request for vaccine exemption. *See* 600 U.S. at 468. SRFR identifies several different kinds of costs it would have faced had it allowed firefighters to work unvaccinated. For our purposes, we will group them into three categories: (1) health and safety costs, (2) operational burdens, and (3) financial burdens.

1. Health and safety costs

SRFR argues that it faced increased health and safety costs by allowing firefighters to work unvaccinated. Plaintiffs think these health and safety costs are overstated. SRFR was concerned with the health of two distinct populations: its own employees and the public, including

_____

[4] Plaintiffs have directed us to *Bacon v. Woodward*, 104 F.4th 744 (9th Cir. 2024). We do not think that case aids our analysis here. In *Bacon*, Spokane firefighters brought an as-applied Free Exercise Clause challenge to the city's implementation of the Proclamation. *Id.* at 754. We concluded that those plaintiff-firefighters had adequately pleaded that the city's policy was "fatally underinclusive" and, therefore, not narrowly tailored. *Id.* at 753. The plaintiffs in that case did not bring a Title VII claim, and the case does not even cite *Groff*. *See id.* at 747 (indicating that the district court's reference to Title VII was the wrong standard for a First Amendment claim).

vulnerable patients, that it serves. The declaration of Fire Chief O'Brien provided some context for SRFR's concerns. Chief O'Brien stated that, as of 2021 when the vaccine mandate went into effect, SRFR employed 248 persons, of which 192 were firefighters. All the Plaintiffs were firefighters or paramedics of some kind, and all were required to maintain a current Washington State certification as an EMT or paramedic. Chief O'Brien stated that in 2021, SRFR responded to 18,000 emergency calls, 85% of which were calls for emergency *medical* services. During that year, SRFR transported 6,866 persons to area hospitals.

At summary judgment, SRFR relied on the extensive declaration of Dr. John Lynch to explain its concerns for its employees and the public it served. Dr. Lynch is a board-certified physician in infectious disease, Professor of Medicine at the University of Washington School of Medicine, and Associate Medical Director at Harborview Medical Center. Among other things, Dr. Lynch led the University's COVID response, including the medical school's decision to require COVID-19 vaccinations for its clinical employees. His testimony is unrebutted by Plaintiffs.[5]

Dr. Lynch opined that COVID vaccination is the best way to slow the spread of COVID and prevent serious illness or death. He explained that "being fully vaccinated provides better protection [from reinfection] as compared to having recovered from COVID." Further, he opined that "[p]eople who would rather contract COVID-19 to get infection-

---

[5] The district Court concluded that "Dr. Lynch is qualified as an expert on infectious diseases generally and COVID-19 specifically." Plaintiffs do not contest Dr. Lynch's qualifications; on appeal, they refer to Dr. Lynch as an "infectious disease[] expert."

mediated immunity rather than simply get vaccinated are taking a significant risk of severe illness, longer-term serious health problems . . ., and death, even if they have recovered" from COVID, and "also risk infecting others . . . with whom they come in contact." Dr. Lynch added context for the timing of the Proclamation's vaccination mandate in the latter part of 2021: During that time, "cases were spiking due to the Delta variant despite other strategies in place. This was followed by the Omicron waves, which continued . . . into 2022."

Dr. Lynch reviewed "the risks of COVID-19 spreading throughout fire stations." He wrote that "[o]utbreaks among firefighting teams would lead to potentially severe limits on EMS and firefighting responses in the community." He concluded that "[b]ased on [his] experience with the layouts of fire stations and the research literature relevant to this environment, none of [the suggested mitigation measures] could have been effective non-pharmaceutical interventions to prevent the spread of COVID-19."

Similarly, Dr. Lynch discussed how unvaccinated firefighters might endanger the public when they "have to enter public buildings or private residences" and when they "transport injured or sick persons in their vehicles." He observed that Plaintiffs' proposed mitigation techniques— "assigning unvaccinated firefighters to the same . . . shifts, assigning individual bedrooms such that they are only used by other unvaccinated firefighters . . . , [and] designating restrooms such that unvaccinated employees use one restroom"—were "aimed only at transmission in the fire station and not in work vehicles or as personnel are . . . interacting with members of the public. . . . None of these suggestions would have reduced the chances of bringing an

infected firefighter into proximity to an often higher-risk patient population."

Dr. Lynch explained in some detail why Plaintiffs' proposed accommodation—testing, masking, and social distancing in lieu of vaccination— was inadequate. Regular COVID-19 testing was "not sufficient" because tests are not always accurate and unvaccinated people subject to testing were "among positive cases that . . . caused outbreaks in" Washington. Dr. Lynch described PPE, like masks, as "complements, not substitutes, for getting vaccinated," since "[m]asks shore up protection on the outside," and vaccines do so on the "inside." According to Dr. Lynch, vaccines are "effective around the clock," and masks are not because "a work-based masking requirement applies only while employees are at work." He cited various studies that supported these conclusions. Dr. Lynch disagreed with Plaintiffs' contention that social distancing served as an adequate alternative to vaccination because even if firefighters could socially distance in the fire station, they could not do so in work vehicles or in public. For Dr. Lynch, "vaccination was and is the single best tool available for stemming the spread of COVID-19 . . . , especially when used in combination with other mitigations."

Even if Plaintiffs' proposed alternatives would have been sufficient, the evidence submitted by Plaintiffs and SRFR showed that Plaintiffs did not always wear masks or social distance. Although Plaintiffs submitted affidavits that stated that firefighters were always masked when in fire engines and always social distanced in the fire station, such evidence was anecdotal and contradicted by other evidence in the record. One Plaintiff, for example, admitted that firefighters did not wear masks when sleeping, eating, and drinking at the firehouse, and another admitted that firefighters did not

wear masks at all times. Chief O'Brien also stated in his deposition that there were "a lot" of times he saw firefighters without masks.

Plaintiffs fail to provide any evidence that their proposed accommodation would have been a reasonable alternative to vaccination. Although Plaintiffs' declarations state they were "able to safely perform [their] job" and "never transmitted [COVID] to another employee, co-worker, or patient, or member of the public," these general assertions are unsupported by any medical evidence and would be impossible to prove at trial.

*Groff* tells us that we may look to EEOC guidance to help determine if these health and safety costs would have imposed an undue hardship on SRFR. *See* 600 U.S. at 471 ("[A] good deal of the EEOC's guidance in this area is sensible . . . ."). The EEOC has said that when considering undue hardship in the context of COVID, employers should consider if the employee "works in a solitary or group work setting," "has close contact with other employees or members of the public," and "works outdoors or indoors." *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, EEOC (published Mar. 1, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws [https://perma.cc/CQ9C-JPNY]. Each of these considerations weighs in favor of finding undue hardship here—firefighters work in group settings, interfacing constantly with coworkers and the public, both inside and outdoors.

Allowing unvaccinated firefighters to keep working in October 2021 would have come at a substantial cost to SRFR. The objective, unrebutted medical evidence shows

that SRFR would have faced significant health and safety costs by allowing unvaccinated firefighters to continue working, even with accommodations. Those costs would have affected SRFR's own workforce and persons in the public needing emergency, even life-saving, services. Because firefighters did not (and likely could not) always mask and social distance, SRFR needed a way to ensure employee and public safety. Dr. Lynch's opinion explains that the vaccine offered the safest, easiest, and most effective way of doing so.

2. Operational burdens

SRFR also argues that it faced a serious operational burden because forty-six of its 192 firefighters—almost one quarter of its force—requested an exemption and accommodation. Plaintiffs argue that because only eleven firefighters ended up needing accommodation, SRFR overstates this cost.

SRFR provided essential EMT and firefighting services during the pandemic. The cost of accommodating nearly twenty-five percent of its firefighters is substantial. The fact that forty-six requests were "initially received" is the critical data point because after receiving those requests, SRFR had to make a decision regarding accommodation. And given the circumstances, there can be no doubt that granting that many exemptions would have hamstrung SRFR's operations. *See Groff*, 600 U.S. at 476 (Sotomayor, J., concurring) ("[F]or many businesses, labor is more important to the conduct of the business than any other factor.").

There is an additional operational cost to Plaintiffs' requested accommodation. As we discussed in the prior section, allowing unvaccinated firefighters to work—even if

they were masked, tested regularly, and maintained social distancing—put other firefighters at risk. SRFR could not afford to have substantial numbers of its firefighters on sick leave. And given the community-critical nature of SRFR's mission, this is not a risk that SRFR could assume lightly. As Dr. Lynch pointed out, any "[o]utbreaks among firefighting teams would lead to potentially severe limits on EMS and firefighting responses in the community."

### 3. Financial costs

Finally, SRFR directs us to the financial costs of accommodating unvaccinated firefighters, three of which merit discussion.

First, SRFR worried about the "increased risk" of employee absences and the scheduling issues that would result from those absences. Although *Groff* mentioned that temporary labor costs alone do not constitute an undue hardship, 600 U.S. at 473, firefighter absences or a fire station COVID outbreak could hamper operations for weeks at a time. Absenteeism among firefighters not only imposed real and substantial costs to SRFR, it also threatened real costs on the community.

Second, SRFR risked losing a contract to provide emergency medical services to the Department of Corrections (DOC) at its Monroe Correctional Complex. The contract provided almost $400,000 in annual revenue to SRFR. In September 2021, a month after the Proclamation, DOC advised SRFR that it would require proof of vaccination for all on-site contractors and said that "[f]ailure to provide proof of full vaccination . . . may result in DOC denying entry." DOC acknowledged that this policy might particularly impact "personnel who seek an exemption for a disability or sincerely held religious belief." Therefore,

while DOC was willing to consider accommodations, it "ha[d] not identified any reasonable accommodations available for [contractors] whose work must be performed on-site."

Plaintiffs argue that DOC never objected to SRFR's unvaccinated firefighters working in its facilities once SRFR allowed unvaccinated firefighters to return to work in May 2022. Even if this is true, DOC's policy is not within SRFR's control, and at the time SRFR imposed its vaccine mandate, SRFR had a reasonable concern that it would lose a lucrative contract. This is a textbook economic hardship. *See Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1151 (D. Or. 2024) ("Before *Groff*, federal courts regularly considered . . . economic . . . costs when conducting the undue hardship analysis. . . . Following *Groff*, district courts have continued to consider . . . economic . . . costs when conducting the undue hardship analysis." (collecting cases)). The potential loss of a contract with DOC was a cost that SRFR was entitled to consider.

Third, SRFR argues that it faced potential liability for claims brought against it "regarding COVID-19 transmission." SRFR's insurance policy excludes "any liability, defense cost or any other amount incurred by or accruing directly or indirectly . . . from . . . a Communicable Disease or the fear or threat . . . of a Communicable Disease." In accordance with the policy, the insurer informed SRFR that "if any patient sued SRFR and alleged that an unvaccinated employee gave them COVID-19, the insurance pool would not defend or indemnify SRFR . . . ."

Plaintiffs argue that this fear is hypothetical and explain that one Plaintiff spoke to a representative of SRFR's insurer who confirmed that it had never faced such a lawsuit. In

general, we consider only actual hardships, not hypothetical ones when assessing undue hardship. *See EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) ("A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of actual imposition on coworkers or disruption of the work routine." (quotation marks and citation omitted)). That said, we do not understand "undue hardship" to mean "realized hardships." An undue hardship may include an evaluation of the risk of hardship, not just an accounting of damages actually suffered. The risk of undue hardship, however, must be realistic and not "merely conceivable or hypothetical." *See id.* (citation omitted). When SRFR's insurer issued a warning about what would or would not be covered by its "Communicable Disease" exclusion, SRFR was justified in seriously considering whether it was prepared to assume the risk of liability.

\* \* \*

SRFR has pointed to several substantial costs of accommodating Plaintiff's requested vaccine exemption—the health and safety of its own firefighters and the public, the large number of firefighters seeking accommodations, the risk to its operations and the cost of widespread absences, the potential loss of a lucrative contract with DOC, and the risk of additional liability. SRFR also provided unrebutted medical evidence that showed the inadequacy of Plaintiffs' proposed accommodation. All of this amounts to a showing that SRFR could not reasonably have accommodated Plaintiffs without undue hardship in October 2021. *See Groff*, 600 U.S. at 469; *Peterson*, 358 F.3d at 606.

Plaintiffs, both in their briefing and at oral argument, urge us to look at this case with the benefit of hindsight.

They thus express their puzzlement as to why SRFR mandated the vaccine for a seven-month period (October 2021 to May 2022) after managing the pandemic without one at other times.  Plaintiffs point out that other fire departments in the area allowed unvaccinated firefighters to continue working.  In one instance, a neighboring fire department hired Plaintiff David Petersen while he was on leave from SRFR.  He then fought fires alongside his SRFR peers because of a mutual-aid agreement between the departments.

We cannot judge SRFR by the responses taken by other fire departments.  The reasonableness of others' decisions is not before us.  Nor can we judge SRFR with the clarity of hindsight or the benefit of post-pandemic debates over what measured responses frontline employers should have taken.  We must consider the costs faced by SRFR in October 2021, not today.  As Dr. Lynch explained, at the time the Governor issued the Proclamation, "COVID-19 cases were spiking due to the Delta variant despite other strategies in place.  This was followed by the Omicron waves, which continued in this area into 2022."  The pandemic forced the State of Washington to make decisions quickly and with limited information.  In so doing, SRFR relied on the scientific evidence and COVID data then available and acted in the best interests of the community.

Both sides have cited district court cases involving Title VII in support of their arguments.  Each of these cases involves a claim of religious exemption from COVID-related restrictions.  Plaintiffs identify three decisions that they believe support their position here.  But each case is distinguishable because the employers failed to establish that they could not accommodate their employees without undue hardship in ways that SRFR did not.  *See Malone v. Legacy*

*Health*, No. 3:22-cv-1343, 2024 WL 3316167, at *4 (D. Or. July 5, 2024) (denying summary judgment because the record lacked "any evidence that Defendant made an individualized inquiry into whether Plaintiff could be accommodated"); *Floyd v. Trinity Cent. Home Health, LLC*, No. 6:22-cv-6117, 2024 WL 3653055, at *7 (W.D. Ark. Aug. 5, 2024) (denying summary judgment because "the record [was] devoid of *evidence* showing that granting an accommodation would result in substantial increased costs in relation to Defendant's business"); *Hayslett v. Tyson Foods, Inc.*, No. 1:22-cv-1123, 2023 WL 11897503, at *13 (W.D. Tenn. Sept. 20, 2023) (denying summary judgment because defendants failed to show how accommodating plaintiffs would come at a substantial cost and because "the undue burden test is fact-bound and therefore ill-suited for determination as a matter of law at summary judgment"). Unlike in those cases, SRFR thoroughly explained the medical evidence that supported its decision, why Plaintiffs' proposed accommodation would not be sufficient, and the other costs it would face if it did not institute a vaccine mandate. The costs were substantial.

For its part, SRFR has cited several cases that came to the same conclusion as we do here. *See, e.g.*, *Lavelle-Hayden*, 744 F. Supp. 3d at 1155–59 (finding employer-healthcare provider would face undue hardship by accommodating employee-respiratory therapists because allowing approximately four percent of its employees to remain unvaccinated would "compromise[] both employee and patient safety"); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp. 3d 1117, 1123–25 (C.D. Cal. 2023) (finding employer-television production company would face undue hardship by accommodating an actor's vaccine exemption request because the actor's increased risk of contracting

COVID would pose "logistical problems" that would shut down the television set and cost the employer at least $150,000 per day).

We also note two recent decisions in the First Circuit that found undue hardship in cases similar to this one. In *Melino v. Boston Medical Center*, 127 F.4th 391 (1st Cir. 2025), a nurse brought a Title VII claim against her employer-hospital for denying her request to work unvaccinated in the Cardiac Intensive Care Unit. *Id.* at 394. The First Circuit had little difficulty concluding that "permitting Melino to work unvaccinated would pose an undue hardship by increasing the risk of COVID-19 transmission amongst staff and patients," noting that it was "uncontroverted that [the hospital] implemented its vaccine requirement based on the CDC's recommendations." *Id.* at 397 (quotation marks omitted). Similarly, in *Rodrique v. Hearst Communications, Inc.*, 126 F.4th 85 (1st Cir. 2025), the court found that a television station would have faced undue hardship by accommodating an employee's COVID vaccination exemption request in part because the employer "relied on the objective, scientific information available," and "no medical evidence in the summary judgment record contradict[ed] [the television station's] conclusion that vaccinated people are less likely to infect others." *Id.* at 91, 93 (citations and quotation marks omitted); *cf. Smith v. City of Atlantic City*, 138 F.4th 759, 775 (3d Cir. 2025) (finding that the employer-fire department would not face unreasonable hardship in accommodating a single, non-firefighting employee's request for exemption from a regulation requiring he not have a beard in order to properly wear a breathing mask because there was only "a vanishingly small risk that [he would] be called in to engage

in the sort of firefighting activities for which [a breathing mask] is required").

For reasons explained, we conclude that SRFR could not "reasonably accommodate" Plaintiffs' proposed accommodation "without undue hardship on the conduct of" its business.  42 U.S.C. § 2000e(j).  The district court did not err in granting SRFR's summary judgment motion and denying Plaintiffs' motion.

## IV.   CONCLUSION

We **AFFIRM** the district court's grant of SRFR's motion for summary judgment and its denial of Plaintiffs' motion for summary judgment.

**AFFIRMED.**